[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE: MOTION TO DISMISS
The issue in this case is whether the plaintiff landlord properly named an individual as a former tenant and defendant in this action to charge the individual for use and occupancy of the plaintiff's premises during the period in which the individual's business occupied those premises. The plaintiff argues that the individual is bound to answer for the use and occupancy charges based on the collateral estoppel effect of a related summary process eviction consent judgment. The individual argues that his business, which he alleges to be a corporation, is solely liable for the use and occupancy charges.
It is noted that the plaintiff has correctly stated the rule of collateral estoppel which will control this case. However, CT Page 10944 before the court may rule on the issue, it must first decide the following question of fact: was the defendant in the related summary process eviction consent judgment a corporation, or was it some other form of business entity, such as a sole proprietorship.
If the defendant was a corporation, then the individual named in this case is a shareholder, officer, and direct of that corporation. Corporation law would thus shield that individual from liability. If the defendant was some other form of business entity, then the individual named in this case would be personally liable for the debt of the business, namely the use and occupancy charges at issue here.
The defendant in this action Paul Zalumous,[1] operated a Connecticut corporation named Power Trans Co., Inc., sometime prior to May 1980. Plaintiff's Reply Memorandum in Support of its Motion to Dismiss #107. In May 1980, the state dissolved that corporation for failure to timely file an organizational report. Id.
Ten years later, prior to November 1, 1990, Zalumous, now doing business under the name of "Power Trans" took possession of the Shelton Center Associates' ("plaintiff's") property through a sublease. In early 1991, the plaintiff commenced a summary eviction proceeding (the "original action") to recover its property. As required by General Statutes 47a-23, the plaintiff filed a Notice to Quit. It was addressed:
 To: Power Trans c/o Paul Zalumous, President 875 Bridgeport Avenue Shelton, CT 06484
Memorandum in Support of Plaintiff's Objection to Defendant's Motion to Dismiss #106, Exhibit B. The plaintiff then filed a writ to commence the proceeding. Id., Exhibit A. The writ was styled: "Shelton Center Associates v. Power Trans, Paul Zalumous". Id. The plaintiff filed a complaint captioned: "Shelton Center Associates v. Paul Zalumous d/b/a Power Trans". Id. All subsequent pleadings, motions, and responses in that proceeding, as well as this one, have been so captioned.
On March 6, 1991, the clerk of the court of the Judicial District of Ansonia/Milford at Derby entered a consent judgment on the original action. That judgment named the defendant as "Power Trans, et. al." Id., Exhibit C. CT Page 10945
On July 10, 1991, the plaintiff brought the present action against "Paul Zalomous d/b/a Power Trans" in the Judicial District of Ansonia/Milford at Milford. The present action seeks to recover money from the defendant for the use and occupancy of the plaintiff's property. On August 13, 1991, Zalumous moved to dismiss the plaintiff's complaint. Motion to Dismiss #103. Zalumous' motion is based on analogy to the common law plea in abatement rather than Practice Book 143. Id. In the motion, Zalumous alleges that the plaintiff has sued the wrong party. Id. The plaintiff objected to the motion to dismiss on August 14, 1991, and filed a supporting memorandum at that time. Objection to Defendant's Motion to Dismiss #104.
Both parties have filed memoranda to further refine the issues. In one such memorandum, the plaintiff produces a 1980 Certificate of Dissolution addressed to Paul Zalumous stating that the Connecticut Secretary of State dissolved Power Trans Co., Inc., for failure to timely file an organizational report. Plaintiff's Reply Memorandum in Support of its Objection to Defendant's Motion to Dismiss #107, Exhibit A. Zalumous has not produced evidence to show that the business known as Power Trans was reincorporated. Rather, Zalumous argues the plaintiff is barred from denying Power Trans' corporate status by the doctrine of corporate estoppel. Id.
"[T]he motion to dismiss is the proper vehicle for claiming any lack of jurisdiction in the trial court." Upson v. State,190 Conn. 622, 624-25 n. 4, 461 A.2d 991 (1983). The motion to dismiss replaced the plea in abatement under the Practice Book. Stephenson, Connecticut Civil Procedure, 567 (Cum. Supp. 1982).
Misnomer of a party is not listed as a specific ground for a motion to dismiss under Practice Book 143. However, the common law allowed the use of pleas in abatement to correct misnomers. See, e.g., World Fire and Marine Insurance Co. v. Alliance Sandblasting Co., 105 Conn. 640, 136 A. 681 (1927) (holding that a plea in abatement was proper where a defendant was sued as a corporation rather than as an individual doing business under a trade name).
Today, "[a]ny defendant, wishing to contest the court's jurisdiction, may do so even after having entered a general appearance, but must do so by filing a motion to dismiss within 30 days of the filing of an appearance." Practice Book 142. CT Page 10946
Zalumous' motion to dismiss is based on his argument that the plaintiff is suing the wrong party. That is, Zalumous contends that the proper defendant in this action is Power Trans, not Zalumous. In support of his motion, Zalumous argues that the plaintiff brought the original action against Power Trans as a corporation, not as a sole proprietorship, and not against Zalumous personally. Zalumous argues that it was the corporation that entered the consent judgment with the plaintiff and concludes that he cannot be personally liable for the use and occupancy charges. The plaintiff argued that Power Trans was not a corporation at the time it entered the sublease; that Power Trans was not a de facto corporation; and that the doctrine of corporation by estoppel does not apply in this case.
I. THE COLLATERAL ESTOPPEL EFFECT OF THE ORIGINAL ACTION
 The doctrines of res judicata and collateral estoppel protect the finality of judicial determinations, conserve the time of the court, and prevent wasteful relitigation. Pre judicata or claim preclusion prevents a litigant from reasserting a claim that has already been decided on the merits. Collateral estoppel, or issue preclusion, prevents a party from relitigating an issue that has been determined in a prior suit. . . .
 For an issue to be subject to collateral estoppel, it must have been fully and fairly litigated in the first action. It also must have been necessary to the judgment.
Gionfriddo v. Gartenhaus Cafe, 15 Conn. App. 392, 401-402,546 A.2d 284 (1988).
Courts will find that an issue has been fully and fairly litigated despite the fact that it was resolved in a consent judgment:
 Consent decrees and orders have attributes both of judicial decrees and of contracts. A valid judgment or decree entered by agreement or consent operates as res judicata to the same extent as a judgment or decree rendered after answer and contest. . . .
 Because a consent decree represents a settlement of the controversy by the parties thereto it is usually CT Page 10947 presumed that the parties intended to settle all aspects of the controversy, including all issues raised by the papers comprising the record.
Grange v. Norton, 189 Conn. 29, 32, 34, 453 A.2d 1162 (1983).
Connecticut landlord and tenant law provides the standard by which a court may rule for the plaintiff on a summary process eviction complaint. Where, as here, there is no lease, the necessary findings are as follows: (1) the defendant is occupying the plaintiff's property; (2) without right or privilege; and (3) so continues to hold it after the expiration of a notice to quit. General Statutes 47a-26. Thus, in order for the court in the original action to enter the consent judgment, it had to first find that the defendant was occupying the plaintiff's property. That decision was a necessary element of the consent judgment. Thus, the court's conclusion in the original action that the defendant was occupying the plaintiff's property has a collateral estoppel effect in this action. Gionfriddo v. Gartenhaus Cafe, supra, 401-402. See also, Carnese v. Middleton, 27 Conn. App. 530, 535, 540-43, ___ A.2d ___ (1992) (holding that issues determined in a summary process eviction may have collateral estoppel effect over those same issues in a later action for damages). It is submitted, therefore, that the defendant in the original action is the party from whom the plaintiff may seek use and occupancy charges.
It is noted that the essential question is whether the defendant in the original action was a corporation or not. If Power Trans were a corporate defendant, and Zalumous were its stockholder, officer, and direct, his liability in this action would be limited to the extent of his investment in Power Trans. General Statutes 33-350. If Power Trans were other than a corporate defendant in the original action, such as a sole proprietorship or a partnership, the court may hold Zalumous liable for the full extent of Power Trans' debt. See, e.g., H. Henn 
Alexander, Laws of Corporations, 18 (1983).
II. WAS POWER TRANS A CORPORATION WHEN IT ENTERED THE SUBLEASE
In evaluating any motion to dismiss, the court must construe the pleadings in the light most favorable to the plaintiff. American Laundry Machinery, Inc. v. State, 190 Conn. 212, 217,459 A.2d 1031 (1983). Furthermore, the court must accept all well-pleaded facts as true. Id. CT Page 10948
Generally, where one who is sued individually seeks to escape liability on the ground that he did business as a corporation, that person bears the burden of proving the existence of the corporation, or of proving facts sufficient to estop the plaintiff from denying corporate existence. 18 C.J.S. Corporations 48 (b).
In the present case, the plaintiff argues that Power Trans was not a corporation when it entered the sublease. To support its argument, it produced a Certificate of Dissolution from the Connecticut Secretary of State showing that Trans Co., Inc. was dissolved in 1980. Zalumous has not produced any evidence that Power Trans was a formal corporation when it entered the sublease. Rather, he argues two points. First, Power Trans was an informal, "de facto" corporation, rather than a formal, "de jure" corporation. Second, the doctrine of corporation by estoppel prevents the plaintiff from denying Power Trans' corporate form. A. The Question of De Facto Corporate Form
Connecticut recognizes de facto corporations "where there is a law authorizing such a corporation and where the company has made an effort to organize under the law and is transacting business in a corporate name." Clark-Franklin-Kingston Press, Inc. v. Romano,12 Conn. App. 121, 125, 529 A.2d 240 (1987). In Clark-Franklin-Kingston Press, the court held that a corporation, which the state dissolved for failure to timely file an annual report continued on as a de facto corporation. Id., 124-25. The court interpreted the interplay between the dissolution provisions of General Statutes 33-378 and the reinstatement provisions of 33-388 to authorize de facto corporations. Id., 124. The court reasoned that a de facto corporation existed in that case because the officers, directors, and shareholders made an immediate good faith but ineffective effort to reinstate the corporation. Id., 124-25. It was also significant that the "corporation" continued doing business under the belief that it had the right to do so. Id., 125.
In the present case, none of the considerations that were present in Clark-Franklin-Kingston Press exist. In that case, the business was properly reincorporated within the three year period provided by 33-388 (a). Here, the defendant has not shown any attempt to reinstate Power Trans in the last 12 years. Furthermore, the court of appeals, in Clark-Franklin-Kingston Press, requires that the de facto corporation continue doing business under a corporate name. Id., 125. General Statutes 22-287
(a) provides the formalities that must be observed in using a corporate name. It provides that corporations formed after 1960 CT Page 10949 carry a designation such as "corporation", "inc.", or "ltd." in their name. The defendant has not produced evidence that Power Trans operated with any such designation after 1980.
Based upon the pleadings in this case and the fact that the defendant Zalumous has not met his burden of proving Power Trans was either a de jure or de facto corporation, the court finds that Power Trans was not a corporation when it entered the sublease. B. The Question of Corporation by Estoppel
Zalumous finally claims that plaintiff is barred from seeking recovery from Zalumous by the doctrine of corporation by estoppel. This doctrine is recognized in Connecticut. Clark-Franklin-Kingston Press, supra, 127-28. It is a consideration whenever there is no de jure corporation and the organizational defects prevent a de facto corporation. H. Henn J. Alexander, supra, 355. The doctrine states that one dealing with a business which holds itself out as a corporation may be estopped from denying the business' corporate form in future litigation. Id. "Estoppel does not arise out of every case of holding out and reliance. In the final analysis, the circumstances and equities of a particular case control." Id.
In this case, there are few facts in the record to guide the court in applying the doctrine. For instance, there is no lease agreement between the parties for the court to examine.
To the extent that the record suggests a conclusion, it is found that Power Trans did not hold itself out as a corporation. Once again, Power Trans did not carry a corporate designation in its name, as required by General Statutes 33-287. Nor did it object when the plaintiff repeatedly characterized the defendant as "Paul Zalumous d/b/a Power Trans". It did not demand, for instance, that Zalumous' name be removed or a corporate designation be included. The use of the designation "d/b/a" does not suggest the existence of a corporation. H. Henn J. Alexander, supra, 58 n. 6. Perhaps the most significant fact in the record is that Zalumous did not object when the consent judgment in the original action was entered against "Power Trans, et. al." Zalumous appears to be the only other party named by that designation. It may be significant that he failed to object to the court placing his name on the judgment.
On the other hand, plaintiff did name Zalumous as president of Power Trans in its Notice to Quit. Further, it addressed the CT Page 10950 Notice to Power Trans, not Zalumous. Zalumous argues that these facts suggest plaintiff believed Power Trans was a corporation. It is noted however, that in a case with an unwritten lease, Zalumous may be putting too much emphasis on the details of an initial notice.
In conclusion, it is found that the collateral estoppel effect of the original action binds the defendant in that action to pay the use and occupancy charges that plaintiff now seeks. The court however, must decide whether that defendant was a corporation or an individual. It is clear that the defendant has not produced sufficient proof to meet its burden of showing the Power Trans was a de jure or de facto corporation. Likewise, it has failed to prove that Power Trans is entitled to protection under the doctrine of corporation by estoppel.
The court finds that the defendant Zalumous is not protected by the corporation by estoppel doctrine.
The Motion to Dismiss is denied.
McGRATH, J.